**Richard H. LARSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7615.**

United States Court of Appeals
Fourth Circuit.

Argued April 15, 1958.

Decided May 15, 1958.

Sidney H. Kelsey, Norfolk, Va., for appellant.

Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., and Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and PAUL, District Judge.

PAUL, District Judge.

Richard H. Larson has appealed from a final order entered October 4, 1957, in the District Court for the Eastern District of Virginia at Norfolk.

The proceedings in the District Court were on a petition filed by the appellant for the return of his seaman's wages and certain personal effects which had been delivered into the custody of the court by the Shipping Commissioner at Norfolk, pursuant to the provisions of Title 46 U.S.C.A. § 706. A forfeiture of these wages and personal effects had been declared by the master of the USNS Tomahawk on July 15, 1956, by reason of the appellant's alleged desertion (46 U.S.C.A. §§ 701, 702) from the vessel while it was at Pearl Harbor in the Territory of Hawaii. Appellant's petition for relief from the forfeiture was based on his contention that he had not in fact deserted but had merely "failed to rejoin" his ship.

The District Court entered an order directing the United States to show cause why the prayer of appellant's petition should not be granted, to which the United States answered insisting that Larson had been a deserter and that the forfeiture of his wages and effects was justified. The matter was heard on the testimony of the appellant and of the master of the Tomahawk, both submitted in the form of depositions, together with certain documentary evidence, including the ship's log and other pertinent papers. The District Court rendered an opinion holding that the appellant had deserted and entered an order directing that appellant's wages be forfeited and paid into the Treasury of the United States to be held as part of the fund for the relief of sick and disabled seamen. 46 U.S.C.A. §§ 706, 628. At the same time the court ordered that the appellant's clothing and other personal effects be returned to him.

Those facts in the case which are undisputed are substantially as follows: The appellant, who was a quartermaster on the vessel, had joined the Tomahawk in the United States in January, 1956, and, along with other members of the crew, had signed articles for a term of not exceeding twelve months. The vessel was a tanker and destined for the transportation of oil to and from ports in the Orient. The oil was loaded at a port in the Persian Gulf and delivered to various ports in the Pacific including Pearl Harbor.

In the course of its movements the vessel reached Pearl Harbor on Friday, July 13, 1956, and docked about 9:00 A.M. According to the master of the vessel, while various members of the crew, including Larson, were asking and receiving advances on their wages to spend on shore leave in Honolulu, Larson asked if he could be paid off at this port. The master reminded him that he had signed on for twelve months and could not be discharged until the expiration of that time. After receiving $50.00 to spend ashore Larson left the vessel about 4:00 P.M. that day (July 13th). The vessel was scheduled to sail at 11:00 A.M. next day (Saturday, July 14th). Although it does not appear that the scheduled time of departure had been posted at the time Larson and other crew members went ashore, Larson admits that he knew the customary stay of the Tomahawk in port was around eighteen or twenty hours.

From this point the testimony of the master and of appellant (the only persons testifying) is in sharp contradiction. The master says that at the scheduled sailing time of 11:00 A.M. on July 14, four members of the crew, including Larson, had not returned from ashore and the ship could not sail. Accordingly that afternoon he posted the sailing time for 10:00 A.M. next day, July 15th. In the meantime some of the missing crew members had turned up and he learned that Larson had a room at a local hotel. About 8:00 P.M. that evening (the 14th) the master went to the hotel and to Lar-

son's room. When he entered Larson was sitting in a chair reading a newspaper, was neatly dressed and showing no signs of intoxication. Larson's first words were "How did you find me?" After explaining how he had located him the master told him that the ship was to sail at 10:00 the next morning and explained to him the serious consequences, including loss of wages, which would ensue from his refusal to rejoin the vessel. Larson replied that he was not interested and intended to return to the United States by commercial airline, and that he was not worried about losing his wages, because he would get his money sometime. Feeling that further efforts were useless the master left and had no further news from Larson. The sailing, set for 10:00 next morning, was delayed until 2:00 that afternoon because of the necessity of procuring new men to fill out the crew.

The testimony of the appellant is quite different. He states that when he went ashore he got drunk and stayed so for three or four days. That on the day after he first went ashore he returned to the vessel to bring some personal effects which he had purchased and then went ashore again. He says that on this occasion no sailing time had been posted, but does not claim to have made any inquiry from anyone as to the expected sailing time. He states that he has no recollection of the master coming to his room at the hotel, but that he did meet the master on the street and had some conversation with him. Neither the day nor hour of this street meeting is stated and Larson says that no mention was made then, or at any other time, as to the sailing time of the vessel. The appellant further states that on Sunday, about 11:00 A.M., July 15th, he called the ship's agent and was informed that if he would leave the city immediately and get out to Pearl Harbor he could make the vessel. He says further that he took a taxi and was driven to Pearl Harbor but on arrival there was told that the Tomahawk had already sailed. There seems no doubt that such a telephone

conversation between the appellant and the ship's agent took place. But it seems clear, as shown by the log entry, that this phone call was not on the 15th but was in the forenoon of July 14th, at which time the ship had first expected to sail. It was after Larson failed to appear in response to the information given him in the phone conversation that the master went looking for him and located him that night in the hotel in Honolulu.

As heretofore stated, the Tomahawk finally got away on the afternoon of Sunday, the 15th. Larson and a companion whom he describes as being "with me in this deal" took a commercial flight to the United States on the next day. He says they got the money for this trip by wiring the companion's sister in Seattle.

The District Court, in coming to the conclusion that Larson had deserted the vessel, characterized his testimony as vague and evasive and accepted that version of the matter related by the master. Since it was a question of the credibility of witnesses on an issue of fact we would not be justified in setting aside the conclusions of the District Court unless they were plainly wrong. We do not think they were. Aside from the question of the credibility of witnesses there is other evidence to support the conclusion that the appellant deserted. It is evident that appellant was dissatisfied with his service on the Tomahawk and wanted to end it. From his own testimony it appears that he had been having trouble with one of the mates on the vessel and that he had a decided dislike for the "Persian Gulf run" which he described as being one of the most distasteful in the merchant service. He does not deny that he sought to terminate his service by attempting to get discharged when the vessel reached Pearl Harbor.

Several months after Larson returned to the United States a hearing was had before an examiner of the United States Coast Guard on the charges against him growing out of his conduct at Pearl Harbor. As a result of that hearing the examiner exonerated him of the charge of desertion, but found him

guilty of "failure to join" his vessel. The appellant stresses this finding in support of his prayer for relief. The District Court, as we think rightly, attributed little weight to the examiner's findings in view of the fact that they were based on the statement of the appellant alone. In any event, as the District Court noted, the Coast Guard examiner's findings were not conclusive and the Court was free to make its own determination. 46 U.S.C.A. § 705.

The order of the District Court is affirmed.

Affirmed.